USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Yvonne O. Siclari,

                Plaintiff,

      –v–

New York City Department of Education, et al.,

            Defendants.

---

19-cv-7611 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Yvonne O. Siclari, proceeding *pro se*, filed this action under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State

Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–97, and the New York City Human

Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101–31, charging Defendants New

York City Department of Education ("DOE"), Anthony Cosentino, Joseph Miller, and Hanin

Hasweh[1] (collectively, the "Individual Defendants") with age discrimination and retaliation.

Currently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint

under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 24.

For the following reasons, Defendants' motion to dismiss the Amended Complaint is

GRANTED.

---

[1] Defendant Hanin Hasweh has not appeared in this action, and Defendants represent that "Hanin Hasweh has not been personally served with the summons and complaint." Dkt. No. 25 at 1.  They thus assert that "this motion to dismiss is made on behalf of the DOE and Anthony Cosentino," *id.*  Although Miller is not mentioned in that sentence, he is referenced throughout the Memorandum of Law in support of the Motion to Dismiss, *see, e.g.*, Dkt. No. 25 at 12–13, so it is clear that the motion is made on behalf of Miller, as well.

## I.     BACKGROUND

The Court first provides the factual and procedural background leading to this motion to dismiss.  For the purpose of evaluating this motion to dismiss, all plausible allegations in the amended complaint are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Furthermore, because Plaintiff is proceeding *pro se*, "the Court also considers and assumes the truth of the factual allegations in Plaintiff's opposition to the motion." *Trisvan v. Checkers Drive-In Restaurants, Inc.*, No. 16-CV-7000 (MKB), 2019 WL 332177, at *1 n.3 (E.D.N.Y. Jan. 25, 2019); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." (citation omitted)).

### A.  Factual Background

Yvonne Siclari is 67 years old and has been a teacher with Defendant New York City Department of Education ("DOE") for approximately 27 years.  Dkt. No. 20 ("FAC") ¶ 1. During her tenure, she has primarily taught in schools located in Staten Island.  *Id.* ¶¶ 1–2.

In June 2015, Defendant Anthony Cosentino became interim acting principal of P.S. 21, where Plaintiff was then teaching.  Plaintiff alleges that Principal Cosentino made a number of comments about her during the school year that either directly or indirectly referenced her age, including that he would "have more stories to tell at [her] retirement dinner" and that Plaintiff "needed to take care of [herself] in the next chapter of [her] life."  *Id.* ¶¶ 7–9.

In September 2017, Siclari was placed in the Absent Teacher Reserve ("ATR") pool after a Section 3020-a disciplinary decision was issued against her.  *Id.* ¶ 1–2.  For the 2017-2018 school year, she was supervised by ATR supervisor Joseph Miller.  *Id.* ¶ 3.  During that time, she

was assigned to six schools on a rotational basis, and she has not been given a permanent assignment; six of the schools are in the northern part of Staten Island, which Siclari avers is inconvenient for her commute from Central New Jersey. *Id.* ¶¶ 3–4.

One of the schools to which Siclari was assigned during the 2017–2018 school year was P.S. 29. Siclari was the oldest ATR teacher assigned to P.S. 29 that year; three other ATR teachers were assigned to P.S. 29, as well. Siclari was the only one of the four ATR teachers assigned to P.S. 29 who received poorly rated observations from Miller. Siclari was also assigned to P.S. 74 that year. Another ATR teacher assigned to P.S. 24, also younger than Siclari, did not receive poorly rated observations from Miller. *Id.* ¶ 10.

Miller observed Siclari four times during the 2017-2018 school year. *Id.* ¶ 11. Of those four evaluations, Miller issued three unsatisfactory ratings and only one satisfactory rating. *Id.* ¶¶ 11–12. That same year, she received disciplinary letters dated January 22, 2018 and June 8, 2018 from Miller and Defendant Assistant Principal Hanin Hasweh. *Id.* Siclari also received two Unsatisfactory annual ratings (or "U" ratings) during that year: The first, dated June 14, 2018, was issued by Miller; the second, dated June 26, 2018, was issued by Principal Nicole Reid-Christopher, Principal of P.S. 74. *Id.* ¶ 13. Because of these Unsatisfactory annual ratings, Siclari was unable to work per-session summer ATR jobs. *Id.* ¶ 14. She also claims that, due to those ratings, she has not received any interviews for at least 10 positions in the open Market Transfer system, despite having applied to them. *Id.* ¶¶ 15. Additionally, while Siclari was working at P.S. 29 during the 2017-2018 school year, school administrators ordered her to wear a badge that indicated she was from the ATR pool; Siclari had never before seen such a requirement for ATR teachers. *Id.* ¶ 17.

On or around July 14, 2018, Siclari filed a complaint with the New York State Division of Human Rights alleging age discrimination. *Id.* ¶ 18; *see also id.* at 44 (SDHR Complaint attached to the Amended Complaint). She submitted an addendum to her complaint on or around July 23, 2018. *Id.* at 45–47. On or around December 21, 2018, she received a disciplinary letter while assigned to P.S. 19 in Staten Island, which she claims was unwarranted. *Id.* ¶ 21. On February 14, 2019, meanwhile, she was involuntarily re-assigned and placed at the Petrides reassignment center and district office in Staten Island. *Id.* ¶ 22. She was also served with new Section 3020-a charges that sought to terminate her employment. *Id.* During the Section 3020-a hearings that followed, Siclari was served three additional specifications that arose from a June 8, 2018 disciplinary letter. *Id.* ¶ 23. Then, on August 5, 2019, Siclari received a Section 3020-a decision that imposed a $12,000 fine against her, payable over several months, and that ordered her to complete six hours of professional development. *Id.* ¶ 24. Since then, Siclari has continued working as a rotating ATR teacher at various DOE schools in Staten Island.

**B. Procedural Background**

Plaintiff initiated this lawsuit on August 14, 2019. Dkt. No. 1. On November 4, 2019, Defendants moved to dismiss the original complaint. Dkt. No. 15. In response to this Court's order under Rule 3.F of the Court's Individual Practices in Civil Cases, Dkt. No. 17, Plaintiff filed her First Amended Complaint ("FAC") on December 4, 2019. Dkt. No. 20. Defendants filed their motion to dismiss the FAC on January 7, 2020. Dkt. No. 24. Plaintiff then filed her opposition on April 13, 2020, Dkt. No. 34, and Defendants replied on April 24, 2020. Dkt. No. 35.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A plaintiff is not required to provide "detailed factual allegations" in the complaint.  *Twombly*, 550 U.S. at 555.  To survive a 12(b)(6) motion, however, a plaintiff must nonetheless assert "more than labels and conclusions."  *Id.*  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  When applying this standard, a Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor.  *See ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).  The Court need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly,* 550 U.S. at 555.

When a plaintiff is proceeding *pro se*, the Court holds the pleadings "to less stringent standards than formal pleadings drafted by lawyers."  *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).  That is, the Court will liberally construe the complaint.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).  Notwithstanding this, "the duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it."  *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (alteration in original) (citation omitted).  If a *pro se* plaintiff has not pled sufficient facts

to state a claim that is plausible on its face, the Court must dismiss his complaint.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

## III.    DISCUSSION

Plaintiff asserts discrimination and retaliation claims under the ADEA, the NYSHRL, and the NYCHRL.

### A.    Procedural Hurdles to Plaintiff's ADEA Claims

Defendants raise a number of procedural hurdles facing Plaintiff's federal claims. Defendants argue that the ADEA claims against the individual defendants should be dismissed because the ADEA does not allow for individual liability and argue that Plaintiff's ADEA claims are partially time-barred

Evaluating these arguments, the Court concludes that Plaintiff's Title VII claims against both Defendants and her ADEA claims against Ms. Stinson must be dismissed.  But the Court cannot dismiss Plaintiff's ADEA discrimination or retaliation claims against the DOE at this stage.

### 1.    Individual Liability under the ADEA

The Court turns first to Defendants' arguments for dismissing Plaintiff's ADEA claims against the individual defendants.  Although the ADEA is a "hybrid statute" created from remedies provided under both Title VII and FLSA, "[a]s far as the term 'employer' is concerned, the ADEA was modeled after Title VII."  *Wray v. Edward Blank Assocs., Inc.*, 924 F. Supp. 498, 503 (S.D.N.Y. 1996).  *Compare* 42 U.S.C. § 2000e(b) *with* 29 U.S.C. § 623(a)(1).  In this circuit, individual defendants may not be subject to liability under Title VII.  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).  Courts in this circuit have therefore consistently held that the ADEA, like Title VII, does not impose liability on individuals.  *Wang v. Palmisano*, 51

F. Supp. 3d 521, 537 (S.D.N.Y. 2014) (collecting cases); *Sulehria v. New York*, No. 13-CV-6990 (AJN), 2014 WL 4716084, at *4 n.3 (S.D.N.Y. Sept. 19, 2014); *see also Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order) (noting that the ADEA does not "subject[ ] individuals, even those with supervisory authority over the plaintiff, to personal liability").

The Amended Complaint does not make clear whether Plaintiff intended to bring ADEA claims against the Individual Defendants.[2]  But to the extent that Plaintiff did so, those claims are hereby DISMISSED with prejudice.

### 2.   Plaintiff's ADEA Claims Are Partially Time-Barred.

The ADEA imposes two timing requirements on complainants.  In a deferral state like New York, which possesses its own age discrimination laws and enforcement authorities, individuals aggrieved by acts of discrimination have "300 days [from the alleged discriminatory action] to file an ADEA charge with the EEOC, whether or not the charge is initially filed with the deferral-state agency."  *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 328 (2d Cir. 1999); *see also* 26 U.S.C. §§ 626(d)(2), 633(b).  Defendants contend that Siclari failed to file an EEOC charge within 300 days of many of the alleged discriminatory acts or plead any facts to that effect, and they argue that any allegedly discriminatory acts occurring before September 17, 2017, are time-barred.  Dkt. No. 25 at 8–9; Dkt. No. 35 at 3–4.

Before a plaintiff may assert claims under the ADEA in federal court, she must present the claims forming the basis of such a suit in a complaint to the EEOC.  *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006); *see also Zoulas v. New York City Dep't of*

---

[2] In her opposition, Plaintiff did not address Defendants' arguments that the ADEA does not allow for individual liability.  That alone would justify dismissal of the claim, insofar as "[t]his Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. Cty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).  In any event, the case law is clear that the ADEA does not support individual liability.

*Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019).  Generally, "if the plaintiff has initially filed an administrative claim in a state whose laws prohibit such discrimination, the limitations period for filling an action is 300 days after the alleged unlawful practice."  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019).  "Where the plaintiff complains of discrete discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,' such claims are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period."  *Id.* (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).  "[A] claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct."  *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000).

Siclari filed her complaint with the SDHR alleging age discrimination, retaliation, and hostile work environment on July 13, 2018, which was cross-filed with the EEOC.  *See* FAC at 44 (SDHR Complaint).  She amended the Complaint on July 23, 2018 to include new claims based on her experience during the 2017-2018 school year.  *Id.* at 45–47.

Defendants argue that "any alleged discriminatory acts occurring before September 17, 2017"—300 days before July 14, 2018—"are time-barred."  Dkt. No. 25 at 8–9.  Plaintiff counters that under the continuing violation doctrine, all allegations in her first amended complaint can be considered.  *See* Dkt. No. 34 at 5–6 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–18 (2002)).

The continuing violation doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Trinidad v. New York City Dep't of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (citations and

internal quotation marks omitted).  "The continuing violation doctrine provides that '[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last [violation].'" *Flores v. United States*, 885 F.3d 119, 121 (2d Cir. 2018) (brackets in original) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).

What events trigger the running of the filing period depends upon the type of act alleged by the plaintiff.  When the plaintiff alleges a "discrete act" of employment discrimination, including termination, failure to promote, denial of transfer, or refusal to hire, each act triggers the running of the limitations period.  *Anyanwu v. City of New York*, No. 10-CV-8498 (AJN), 2013 WL 5193990, at *9 (S.D.N.Y. Sept. 16, 2018) (citing *Morgan*, 526 U.S. at 114).  As a result, "[t]o qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'"  *Dash v. Bd. of Educ. of City Sch. Dist. of New York*, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017) (quoting *Morgan*, 536 U.S. at 115); *see also Zoulas*, 400 F. Supp. 3d at 49.  That is, "[m]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."  *Glaser v. Fulton-Montgomery Cmty. Coll.*, 50 F. App'x 17, 20 (2d Cir. 2002) (citation and internal quotation marks omitted). On the other hand, when the plaintiff alleges a continuing violation like a hostile work environment, she "need only show that part of the violation took place within the limitations period."  *Anyanwu*, 2013 WL 5193990, at *9.

Plaintiff's allegations regarding discrimination, even read with the "special solicitude" afforded to *pro se* litigants, *see Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006), do not merit application of the continuing violation doctrine.  To begin with, many of the allegations involve different schools, in different environments, and with different persons

responsible.  Plaintiff provides no reason, for instance, to analyze Cosentino's remarks during the 2015-2016 school year and Defendant Miller's issuance of unsatisfactory ratings during the 2017-2018 school year as the result of a single "discriminatory policy or mechanism."  *Glaser*, 50 F. App'x at 20.  In addition, many of Plaintiff's allegations relate to disparate disciplining, negative performance reviews, and denial of a preferred job position—the kinds of claims that other courts have best understood as examples of discrete acts.  *See, e.g.*, *Zoulas*, 400 F. Supp. 3d at 50 ("Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position.").

As discussed further below, furthermore, Plaintiff has not alleged facts to support a hostile work environment theory.  So while "[h]ostile environment claims are different in kind from discrete acts," in that "[t]heir very nature involves repeated conduct," *see Morgan*, 536 U.S. at 115, Plaintiff cannot rely on a hostile work environment claim to support application of the continuing violation doctrine.  Simply put, the facts alleged in the Amended Complaint do not evince support for Plaintiff's invocation of the continuing application doctrine.  As a result, Plaintiff cannot premise her claims on any of the alleged discriminatory acts that occurred prior to September 17, 2017.[3]

### B.  Facial Plausibility of Plaintiff's ADEA Claims

As already noted, Plaintiff's ADEA claims are partially time-barred, and as a result they cannot be premised on facts that occurred prior to September 17, 2017.  While the first amended complaint does not expressly state both hostile work environment and discrimination

---

[3] Notwithstanding this, the time-barred acts may nonetheless provide "background evidence in support of a timely claim."  *Davis-Garett*, 921 F.3d at 42 (quoting *Morgan*, 536 U.S. at 113).

claims, the Court construes it as raising both arguments.  Plaintiff also alleges that Defendants engaged in impermissible retaliation, in contravention of the ADEA.  Nevertheless, all three claims fail.

*First*, Plaintiff has not pleaded sufficient facts to state a hostile work environment claim under the ADEA.  Under the ADEA, a hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment."  *Kassner v. 2nd Ave. Deli., Inc.,* 496 F.3d 229, 240 (2d Cir. 2007) (citation and internal quotation marks omitted).  The ADEA applies the same standards for assessing hostile work environment claims as does Title VII.  *See Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 472 (S.D.N.Y. 2013).  Thus, to establish a hostile work environment claim, a plaintiff ordinarily "must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's [protected class]."  *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly,* 243 F.3d 687, 691–92 (2d Cir. 2001)).  In engaging in this analysis, a court employs a totality of the circumstances analysis.  *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).  Among other things, a court may consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."  *Id.* (citation omitted).  Due to the fact-intensive inquiry of this assessment, the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss such a claim.  *Id.* (citing *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d

Cir. 2003)); *see also Trachtenberg*, 937 F. Supp. 2d at 472.  To be sure, "[a]t the pleading stage of the case . . . plaintiffs need not plead a *prima facie* case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests." *Kassner*, 496 F.3d at 241.

Yet despite the relatively lenient standard at the motion to dismiss stage, and despite consideration of Plaintiff's *pro se* status, the amended complaint still does not plead facts to support a hostile work environment theory.  "[O]ne of the critical inquiries in a hostile environment claim must be the *environment.*  Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (citing *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987) (emphasis in original)).  And "[t]o establish a hostile work environment, plaintiffs must prove that the incidents were sufficiently continuous and concerted to be considered pervasive." *Kassner*, 496 F.3d at 241 (citation and internal quotation marks omitted).  Here, Plaintiff's allegations—which involve different employees at different schools over a period of several years—do not establish a plausible hostile work environment claim.  Plaintiff provides no basis to consider her set of discrete allegations involving Cosentino and Miller, for instance, as a single hostile work environment, or that any of the allegations were either continuous or concerted in a way that would support even a plausible inference of pervasiveness. *See Mendez-Nouel v. Gucci Am., Inc.*, No. 10-CV-3388 (PAE), 2012 WL 5451189, at *9 (S.D.N.Y. Nov. 8, 2012), *aff'd*, 542 F. App'x 12 (2d Cir. 2013) (noting that in the Title VII hostile work environment context, "incidents must be more than episodic; they

must be sufficiently continuous and concerted in order to be deemed pervasive." (citation and internal quotation marks omitted)).  Indeed, the amended complaint contains, at most, only allegations of "isolated acts, [which] do not meet the threshold of . . . pervasiveness."  *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (citing *Alfano v. Costello,* 294 F.3d 365, 379–80 (2d Cir. 2002)).  Along those lines, none of Plaintiff's allegations come close to establishing a permeation of discriminatory intimidation, insult, or treatment sufficiently pervasive as to "alter the conditions of the victim's employment."  *Kassner*, 496 F.3d at 240 (citation omitted).

In addition, none of the allegations, even if true, establish the kind of severity that characterize plausible hostile work environment claims.  Cosentino's two remarks are not enough.  *See Ardigo v. J. Christopher Capital, LLC,* No. 12-CV-3627 (JMF), 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (dismissing claim based on offensive statements made on three occasions).  Nor do Plaintiff's factual allegations regarding the unsatisfactory ratings allege, beyond a speculative level, that Plaintiff was treated less favorably because of her age.  *See Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (finding that allegations regarding others' favorable treatment on the basis of gender did not assert a plausible hostile work environment claim); *see also Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205 (RA), 2020 WL 4340947, at *9 (S.D.N.Y. July 28, 2020).  Similarly, Plaintiff's allegation that she was ordered to wear a badge indicating that she was from the ATR pool lacks any basis to conclude that she was ordered to wear the badge because of her age or that the terms of her employment were in any way altered by that requirement.

Considered cumulatively, the allegations in the amended complaint fall short of establishing the kind of frequency, severity, and permeation of conduct that would support even

a plausible hostile work environment claim. *See Alfano v. Costello,* 294 F.3d 365, 379–80 (2d Cir. 2002) (collecting cases); *Trachtenberg*, 937 F. Supp. 2d at 473 (collecting cases); *Kremer v. New York State Ins. Dep't*, No. 06-CV-9949 (RLC), 2009 WL 777721, at *6 (S.D.N.Y. Mar. 25, 2009), *on reconsideration in part*, No. 06-CV-9949 (RLC), 2009 WL 2776637 (S.D.N.Y. Sept. 1, 2009).  Thus, an assessment of the totality of the circumstances, even after drawing all reasonable inferences in Plaintiff's favor and taking into consideration Plaintiff's *pro se* status, does not support a finding that Plaintiff has stated a plausible hostile work environment claim under the ADEA.

 *Second*, even at this juncture, Plaintiff has not stated a plausible discrimination claim.  To state a discrimination claim under the ADEA, a Plaintiff must establish that "(1) she was within the protected group of employees (those over age 40); (2) she was qualified for the position in question; (3) she experienced an adverse employment action; and (4) that action occurred under circumstances  giving rise to an inference of discrimination."  *Trachtenberg*, 937 F. Supp. 2d at 466–67 (citing *Bucalo v. Shelter Island Union Free Sch. Dist.,* 691 F.3d 119, 129 (2d Cir. 2012). Disparate claims under the ADEA are analyzed under the burden-shifting scheme adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken against her by her employer, [] that her age was the 'but-for' cause of the adverse action," and a plaintiff "must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31–32 (2d Cir. 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 87 (2d Cir. 2015)).  But "[t]he facts required by *Iqbal* to be alleged in the complaint need

not give plausible support to the ultimate question of whether the adverse employment action

was attributable to discrimination"; instead, "[t]hey need only give plausible support to a

minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311

(2d Cir. 2015). *See also Canada v. Perkins Coie LLP*, No. 18-CV-11635 (JMF), 2020 WL

895705, at *1 (S.D.N.Y. Feb. 18, 2020).

Here, Defendants dispute that Plaintiff has plausibly alleged that she was subjected to

adverse employment actions, and they also argue that she has failed to raise an inference of

discrimination. *See* Dkt. No. 25 at 13–19. As to the first argument, Plaintiff's allegations of

negative performance reviews are not sufficient to plead a materially adverse action, as required

by the ADEA and the NYSHRL. *See Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir.

2015) ("[A] negative performance review, without more, does not represent an adverse

employment action."). Of course, "[n]egative evaluations can be adverse employment actions . .

. if they give rise to material adverse changes in work conditions." *Borzon v. Green*, No. 16-CV-

7385 (VEC), 2018 WL 3212419, at *8 (S.D.N.Y. June 29, 2018) (citation omitted). In her

opposition, Plaintiff alleges that "[a]s a result of these Unsatisfactory annual ratings, I have not

been able to work per session or summer ATR jobs."[4] Dkt. No. 34 at 4. Plaintiff's claims are

lacking in detail as to why she was unable to work per session or why she was denied ATR jobs.

Even construing Plaintiff's claims liberally, they allege merely "[t]he elimination of speculative,

potential future opportunities is insufficient to establish an adverse employment action." *Malone*

*v. N.Y. Pressman's Union No. 2*, No. 07-CV-9583 (LTS) (GWG), 2011 WL 2150551, at *7

---

[4] While Defendants are correct that, ordinarily, parties may not rely on "new facts referred to for the first time in opposition," insofar as "a plaintiff cannot amend her complaint in her opposition," this standard is somewhat more relaxed when it comes to *pro se* plaintiffs. "[A]s a general rule, . . . courts should not consider factual allegations made for the first time in opposition papers." *Paul v. Bailey*, No. 09-CV-5784 (RO), 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013). But "[c]onsistent with the Court's obligation to construe claims made by *pro se* litigants liberally," the Court *may* "consider all of Plaintiff[']s factual allegations, including those made in opposition papers, as further amending his [Complaint]." *Id.*

(S.D.N.Y. May 31, 2011). *See also Woolfolk v. New York City Dep't of Educ.*, No. 19-CV-3706 (RA), 2020 WL 1285835, at *6–*7 (S.D.N.Y. Mar. 18, 2020) (in a case where a *pro se* Plaintiff claimed both denial of per session opportunities and the decline of interview offers, noting that "Plaintiff fails to allege that she suffered any material adverse changes in her work conditions as a result of any of the 'unsatisfactory' ratings."). In addition, Plaintiff's allegations regarding the badge requirement during her time at P.S. 29 is insufficient; at most, that constitutes a non-actionable "mere inconvenience." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). On the other hand, Plaintiff's allegations regarding the imposition of Section 3020-a charges—at least those that are timely—are enough to constitute a materially adverse employment action. *See Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205 (RA), 2020 WL 4340947, at *7 (S.D.N.Y. July 28, 2020) ("[C]ourts in this Circuit have presumed that the imposition of Section 3020-a charges constitutes a materially adverse employment action for the purposes of an ADEA claim."). As a result, Defendants' claim that she has failed to allege any materially adverse actions is unpersuasive.

Despite this, Plaintiff's ADEA claim still fails because she has not pleaded any facts to establish even a minimal inference of discrimination. As an initial matter, in assessing whether Plaintiff has plausibly alleged enough to support an inference of discrimination, the Court can consider both timely and untimely allegations; the untimely allegations may provide "background evidence in support of a timely claim." *Davis-Garett*, 921 F.3d at 42 (quoting *Morgan*, 536 U.S. at 113). But even if the Court can consider Cosentino's offensive remarks in its analysis, Plaintiff fails to plead any facts to support, or any reason to believe, that there is a nexus between Cosentino's remarks and the decisions made by Miller and by the DOE. That is, Plaintiff does not plausibly allege that Cosentino's remarks, which would otherwise suffice to

establish an inference of discrimination as to Cosentino, should be impugned on the actors

responsible for the timely factual allegations that must form the basis of Plaintiff's

discrimination claims.  She alleges no facts to establish a nexus between Cosentino and Miller,

for instance, and does not argue that their actions were somehow in concert.  Nor does she

provide a basis to conclude that Cosentino's assertions reflected on any of DOE's conduct that

form the basis of her discrimination claim.  In addition, while discriminatory motivation may be

shown by "the more favorable treatment of employees not in the protected group," Plaintiff has

not adequately alleged that younger teachers were similarly situated in a way that allows for even

a "minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311–12.  *See, e.g.*,

*Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205 (RA), 2020 WL 4340947, at *9

(S.D.N.Y. July 28, 2020) ("The mere fact that these teachers were 'younger' does not

demonstrate that age was the 'but for' cause of the investigation into the October 5, 2016

incident or the subsequent disciplinary charges."); *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp.

2d 420, 465–66 (S.D.N.Y. 2010) (dismissing ADEA claim after noting that plaintiffs "merely

allege[d] that [they were] over 40 years of age and were replaced by younger teachers" and that

such allegations lacked "facts from which age discrimination [could] be inferred").  The

amended complaint does allege that younger teachers did not receive poorly rated observations,

FAC ¶ 10, but it provides no other facts to support even the inference that those teachers were

similarly situated such that Plaintiff's contrary experience was due to or because of her age.  In

sum, even with the generous reading due to *pro se* pleadings and even after drawing all

reasonable inferences in Plaintiff's favor, the allegations contained in the amended complaint

and raised in Plaintiff's opposition to the motion to dismiss do not "raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555.

Finally, Plaintiff has failed to adequately plead retaliation.  The ADEA's anti-retaliation provision forbids an employer from retaliating against an employee for complaining of unlawful age discrimination. *See* 29 U.S.C. § 623(d); *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 205–06 (2d Cir. 2006). A prima facie case of retaliation under the ADEA has four elements: (1) the employee engaged in protected activity, (2) the employer was aware of this activity, (3) the employer took adverse action against the employee, and (4) a causal connection exists between the protected activity and the adverse action.  *Kessler*, 461 F.3d at 205–06.  *See also Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016).  A nearly identical provision can be found in Title VII.  *Kessler,* 461 F.3d at 205.  As in the Title VII context, at the motion to dismiss stage for an ADEA retaliation claim, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of . . . litigation." *Littlejohn*, 795 F.3d at 316.  *See also Hausdorf v. NYC Dep't of Educ.*, No. 17-CV-2115 (PAE) (SN), 2018 WL 1871945, at *8–9 (S.D.N.Y. Jan. 25, 2018), *report and recommendation adopted sub nom. Hausdorf v. New York City Dep't of Educ.*, No. 17-CV-2115 (PAE), 2018 WL 895657 (S.D.N.Y. Feb. 14, 2018) (applying the Title VII analysis to the ADEA context).

Nonetheless, "for a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Massaro v. Bd. of Educ. of City Sch. Dist. of City of New York*, 774 F. App'x 18, 21 (2d Cir. 2019) (citing *Vega,* 801 F.3d at 90).  In engaging in this analysis, judges should "rely on their 'experience and common sense,' and to consider the context in which a claim is made."  *Id.* (quoting *Irrera v.*

*Humpherys*, 859 F.3d 196, 198 (2d Cir. 2017)).  And "[a]s with all retaliation claims, a plaintiff

must show that adverse action was taken because of protected activity."  *Id.*

The Supreme Court and the Second Circuit have defined "adverse action" for purposes of

a retaliation claim broadly. A plaintiff need only "show that a reasonable employee would have

found the challenged action materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Kessler*,

461 F.3d at 207 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The broadness of this definition means that "the scope of [the] anti-retaliation provision is

broader than that of its discriminatory action provision."  *Patane v. Clark*, 508 F.3d 106, 116 (2d

Cir. 2007); *see also Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016).

Indeed, under Second Circuit precedent, "negative evaluation letters, express accusations of

lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process

teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion,

and assignment to [a] classroom on [the] fifth floor which aggravated teacher's physical

disabilities" may qualify as adverse employment actions for purposes of a retaliation claim.

*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) (internal quotations and

citations omitted).  Plaintiff alleges a series of retaliatory actions: (1) the December 21, 2018

disciplinary letter, *see id.* ¶ 21; (2) the February 14, 2019 re-assignment and placement at the

Petrides reassignment center and district office, *id.* ¶ 22; (3) the February 14, 2019 Section 3020-

a charges that sought to terminate her employment, *id.*; (4) the three specifications she received

on or around May 15, 2019, which stemmed from a June 8, 2018 disciplinary letter, *id.* ¶ 23; and

the August 5, 2019 Section 3020-a decision that, among other things, imposed a $12,000 fine

against her, *id.* ¶ 24.  These suffice to establish that Plaintiff suffered adverse action following her filing of the SDHR complaint.

Proof of causation, meanwhile, "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as discrimination of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. NYC Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  Plaintiff does not allege and direct proof of causation by means of evidence of retaliatory animus, and she does not plead other facts to support an inference of causation.  But she contends that the temporal proximity between her filing of the SDHR complaint and the allegedly retaliatory actions suffice to establish indirect proof of causation.  *See* Dkt. No. 34 at 10–12.  Plaintiff alleges that she filed her SDHR complaint on July 14, 2018.  FAC ¶ 18.  In her opposition, she also speculates that "Defendants were not advised of the SDHR complaint until months after I filed it," though she provides no basis for this assertion and alleges no new facts to support it.  Dkt. No. 34 at 12.  The alleged retaliatory actions took place on December 21, 2018; February 14, 2019; May 15, 2019; and August 5, 2019.

Defendants argue in part that Plaintiff did not establish temporal proximity as to any of the alleged retaliatory actions because "there is . . .  a five-month time period between plaintiff's protected activity and the first alleged adverse action, i.e. the December 21, 2018 letter."  Dkt. No. 35 at 8.  And they also claim that "[c]ourts in this Circuit . . . have consistently held that where more than three months have separated the adverse act from the protected, the causal connection is severed."  Dkt. No. 25 at 20 (citing *Berrie v. Bd. of Educ. of the Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 49 (2d Cir. 2018); *Avillan v. Brennan*, No. 16-CV-5611

(AJN) (RLE), 2018 WL 4680027, at *5 (S.D.N.Y. Sept. 28, 2018); *Hollander v. Am. Cyanamid Co.*, 895 F2d 80, 85 (2d Cir. 1990)).

The Second Circuit has not drawn a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). Rather, the inquiry is context-specific, permitting courts to "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Id.* (citing *Espinal*, 558 F.3d at 129). With that in mind, the Court disagrees with Defendants that a five-month gap between the filing of the SDHR complaint and the first alleged retaliatory action is inherently prohibitively remote. *See id.* at 128 (finding that the "seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote."). But that does not resolve the issue. In *Summa*, there were other supporting factual allegations that influenced the Second Circuit's causation analysis. *See id.* at 128–29 (noting that, in addition to the temporal proximity claims, "the other surrounding circumstances . . . are sufficient to allow an inference of causation here."). Here, on the other hand, there is a dearth of supporting facts to bolster the claims of retaliatory motives. *See Avillan*, 2018 WL 4680027, at *5 (in a case where there was a 3.5 month gap between the protected activity and the first alleged retaliatory action, observing that "[w]hile temporal proximity can support an inference of retaliatory intent, even the closest-in-time protected activity was 'too attenuated to establish that the alleged adverse employment action[] [was] the product of a retaliatory motive absent other supporting factual allegations.'" (citing *Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015)). Absent such allegations, even

drawing all reasonable inferences in Plaintiff's favor and taking into account Plaintiff's *pro se*

status, the Court concludes that the amended complaint simply does not plausibly allege that any

of the Defendants acted *because of* Plaintiff's filing of the SDHR Complaint.

Accordingly, Defendants' motion to dismiss the ADEA claims against DOE is

GRANTED.

### C.      Supplemental Jurisdiction Over Plaintiff's Remaining NYSHRL and NYCHRL Claims

Having dismissed Plaintiff's ADEA claims in their entirety, the Court declines to

exercise supplemental jurisdiction over Plaintiff's remaining claims under the NYSHRL and

NYCHRL.  *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (*per*

*curiam*) (noting that "when the federal claims are dismissed the 'state claims should be dismissed

as well.'" (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *Pitchell v. Callan*,

13 F.3d 545, 549 (2d Cir. 1994)); *see also Johnson v. Morrison & Foerster LLP*, No. 14-CV-428

JMF, 2015 WL 845723, at *7 (S.D.N.Y. Feb. 26, 2015) (declining to exercise supplemental

jurisdiction over the plaintiff's NYCHRL and NYSHRL claims after dismissing the federal

claims).

### D.      Leave to Amend

In her opposition, Plaintiff requests leave to file a second amended complaint if the Court

"find[s] that any further factual pleadings are necessary before proceeding to discovery."  Dkt.

No. 34 at 2.  Defendants oppose.  Dkt. No. 35 at 9–10.  Plaintiff was given an opportunity to

amend her Complaint following Defendants' filing of their initial motion to dismiss.  Dkt. No.

17.  Because Plaintiff was previously afforded the opportunity to amend her complaint, these

claims are dismissed with prejudice.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d

Cir. 1996) (dismissal with prejudice is proper when "a party has been given ample prior

opportunity to allege a claim").  In any event, leave to amend may be denied "when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006). Here, Plaintiff was put on notice by Defendant's original motion to dismiss as to the deficiencies of her arguments, and her amended complaint did not cure any of the defects.  As such, Plaintiff's request for leave to file a second amended complaint is DENIED.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's ADEA claims against the Individual Defendants are dismissed with prejudice.  Plaintiff's remaining NYSHRL and NYCHRL claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate all pending motions, enter judgment, and to close the case.  This resolves Dkt. No. 15 and 25.[5]

The Clerk of Court is respectfully directed to mail a copy of this order to Plaintiff and to note that mailing on the public docket.

SO ORDERED.

Dated:  November 30, 2020
            New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[5] Defendants' motion to dismiss the original complaint, dated November 4, 2019, Dkt. No. 15, is denied as moot.